**19SL-CC04524**

Electronically Filed - St Louis County - October 14, 2019 - 03:27 PM

IN THE CIRCUIT COURT OF
SAINT LOUIS COUNTY, MISSOURI

| | |
|---|---|
| **AUTO CLUB FAMILY INSURANCE COMPANY and LITITZ MUTUAL INSURANCE COMPANY A/S/O INSUREDS, AS LISTED ON "SCHEDULE" A** | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) Case No: |
| **BRASSCRAFT MANUFACTURING COMPANY,** | ) ) ) |
| SERVE: CORPORATE HEADQUARTERS 39600 Orchard Hill Pl, Novi, MI 48375-5331 | ) ) ) ) |
| SERVE BY CERTIFIED MAIL | ) ) |
| and | ) ) |
| **MASCO CORPORATION,** | ) ) |
| SERVE: CORPORATE HEADQUARTERS 17450 College Parkway, Livonia, Michigan 48152 | ) ) ) ) |
| SERVE BY CERTIFIED MAIL | ) ) ) |
| Defendants. | ) ) ) |

## PETITION FOR DAMAGES

NOW COME Plaintiffs, AUTO CLUB FAMILY INSURANCE COMPANY, and LITITZ

MUTUAL INSURANCE COMPANY as Subrogees of the INSUREDS as listed on SCHEDULE

A by their undersigned attorney, state in their Petition for product liability against Defendants as

follows:

1

Electronically Filed - St Louis County - October 14, 2019 - 03:27 PM

## NATURE OF THE ACTION

1.      This action seeks to recover damages caused by defects associated with BRASSCRAFT MANUFACTURING COMPANY and MASCO CORPORATION's (hereafter jointly "DEFENDANTS") water supply lines (hereinafter "water supply lines"), which are used to transport water from a water supply pipe to plumbing fixtures.

2.      DEFENDANTS designed, engineered, manufactured, constructed, tested, inspected, packaged, labeled, marketed, distributed, sold, warranted, and/or performed other work in connection with flexible water supply lines, including those of Schedule A Plaintiffs' Insureds. These water supply lines contain certain latent defects that make them unfit for their intended, anticipated or reasonably foreseeable use, including reasonably foreseeable misuse.

3.      DEFENDANTS' water supply lines, including those of Schedule A Plaintiffs' Insureds, are defective because of poor material selection, defective design, defective manufacturing, and lack of or inadequate warnings/instructions, that cause them to routinely fail because circumferential fractures of the plastic coupling nuts.



Electronically Filed - St Louis County - October 14, 2019 - 03:27 PM

4.    Plaintiffs are insurers who made payments to, or on behalf of, their insureds (hereafter "Insureds") for damages caused by DEFENDANTS' water supply lines, and as a result of such payments, are subrogated to the rights of their Insureds and have received an assignment of any claims relating thereto, as against DEFENDANTS.

5.    "Schedule A" is a spreadsheet that lists all of Schedule A Plaintiffs' Insureds who suffered damages that were caused by DEFENDANTS' defective water supply lines as a result of the plastic coupling nut experiencing a circumferential fracture. The spreadsheet includes the Plaintiffs' name, Insureds' names, dates of loss, loss locations and damage amounts.

6.    Plaintiffs suffered harm as a result of DEFENDANTS' actions because their water supply lines contained unreasonably dangerous defects which caused the water supply lines to fail causing harm, not only to the water supply lines, but also to Schedule A Plaintiffs' Insureds' real and personal property.

**THE PARTIES**

7.    Plaintiff, AUTO CLUB FAMILY INSURANCE COMPANY, is an insurance company organized under the laws of the state of Missouri with a principal place of business located at 12901 North Forty Drive, St. Louis, Missouri 63141.

8.    Plaintiff, LITITZ MUTUAL INSURANCE COMPANY, is an insurance company organized under the laws of the commonwealth of Pennsylvania with a principal place of business located at 2 N. Broad Street, Lititz, PA 17543.

9.    At all times relevant hereto, Plaintiffs were authorized to issue policies of insurance in Missouri.

10.   At all times relevant hereto, Schedule A Plaintiffs' Insureds owned and/or occupied the property where the loss occurred as listed on Schedule A (hereinafter "the Properties").

Electronically Filed - St Louis County - October 14, 2019 - 03:27 PM

11.     Prior to the dates of loss listed on Schedule A (hereafter referred to as "dates of losses"), Plaintiffs issued a policy of insurance to Plaintiffs' Insureds; said policies covering the Properties, including their structure and/or contents, and insuring against other losses in effect on the dates of losses.

12.     The claims listed on Schedule A were subject to one or more of a series of tolling agreements that collectively extended the statutory limitations periods of those claims until October 15, 2019.

13.     Defendant, BRASSCRAFT MANUFACTURING COMPANY (hereafter "BrassCraft"), is a Michigan corporation with its principal place of business located at 39600 Orchard Hill Pl, Novi, MI 48375-5331. BrassCraft products are sold at retail stores throughout the United States and in Oakland County. BRASSCRAFT is a wholly owned subsidiary of Defendant, MASCO Corporation.

14.     Defendant, MASCO CORPORATION (hereafter "Masco"), is a Delaware corporation with its principal place of business located at 17450 College Parkway, Livonia, Michigan 48152. Masco products are sold at retail stores throughout the United States and in Oakland County. Masco is the parent corporation of Defendant, BrassCraft.

15.     DEFENDANTS designed, engineered, manufactured, sold, distributed, marketed, packaged, labeled, constructed, tested, inspected, warranted, placed in the stream of commerce and/or performed other work in connection with their water supply lines, including those of Schedule A Plaintiffs' Insureds, for use with common household fixtures and appliances, including toilets and sinks.

Electronically Filed - St Louis County - October 14, 2019 - 03:27 PM

**JURISDICTION AND VENUE**

16.     This Court has general personal jurisdiction and/or limited personal jurisdiction over each of the named parties pursuant to R.S.Mo.§ 506.500.1(3).

17.     Venue is proper in this Court pursuant to R.S.Mo. § 508.010.4.

**GENERAL ALLEGATIONS**

18.     DEFENDANTS designed, engineered, manufactured, sold, distributed, marketed, packaged, labeled, constructed, tested, inspected, warrantied, and/or performed other work in connection with defective water supply lines, including those of Schedule A Plaintiffs' Insureds, with the specific purpose that these be installed by builders, plumbers and consumers in homes and other buildings.

19.     The water supply lines were designed, manufactured and introduced as a safe and superior alternative to rigid metal pipes with shutoff valves. The water supply lines, including those of Schedule A Plaintiffs' Insureds, were marketed as a safe product, of merchantable quality, and fit for their intended, anticipated and reasonably foreseeable uses.

20.     The water supply lines were used to transport water from a supply pipe to a plumbing fixture (e.g., a toilet, or a sink). The water supply lines primarily consist of three main parts: the flexible hose and two coupling nuts, one on each end of the hose, which connect the water supply lines to adjacent plumbing fixtures and the water source. Depending on the particular supply line, one or both of the coupling nuts are plastic. (hereafter referred to as "plastic coupling nut").

21.     At all times material hereto, the water supply lines, including those of Schedule A Plaintiffs' Insureds, were prone to suffering circumferential fractures of the plastic nut, resulting in water leakage causing damage to real and personal property.

5

Electronically Filed - St Louis County - October 14, 2019 - 03:27 PM

22.     DEFENDANTS, however, knowingly failed to disclose that their water supply lines, including those of Schedule A Plaintiffs' Insureds, were subject to serious defects, were unsafe, and posed a substantial risk of failure, in that the coupling nut would crack, resulting in flooding damage to building owners' real and personal property. Even after DEFENDANTS became aware that their water supply lines were failing, DEFENDANTS failed to notify consumers of the defects.

23.     Cracking or fracturing of the plastic coupling nut can cause the supply lines to fail, even under normal pressure conditions and absent any faulty installation and/or misuse by the consumer, because the water being transported is under pressure.

24.     DEFENDANTS knew, or but for their reckless indifference, should have known, that they were receiving and were going to continue to receive reports of failed water supply lines.

25.     Despite their knowledge, DEFENDANTS did not disclose to their customers or prospective purchasers, including Schedule A Plaintiffs' Insureds, that there was a substantial risk that the water supply line would manifest the defect.

26.     Consumers who purchased, and ultimate users of DEFENDANTS' water supply lines, including Schedule A Plaintiffs' Insureds, had no way of knowing that the water supply lines were defective at the point of sale.

27.     At some time, DEFENDANTS began manufacturing water supply lines with plastic coupling nuts. These plastic coupling nuts, including those of Schedule A Plaintiffs' Insureds, were made from an inexpensive plastic rather than metal. These plastic coupling nuts regularly suffer from a circumferential fracture resulting in flooding and damaged property.

28.     DEFENDANTS' water supply lines are connected to the plumbing fixtures such as toilets and sinks with a plastic coupling nut which was designed, engineered, manufactured,

Electronically Filed - St Louis County - October 14, 2019 - 03:27 PM

constructed, tested, inspected, packaged, labeled, marketed, distributed, sold, and/or warranted by DEFENDANTS.

29.     This plastic component is a critical part.  It secures the connector to the plumbing fixture and maintains positive water flow.

30.     When using plastics to manufacture and design parts, the plastics industry recognizes that a proper design strategy will include, at minimum: (a) a concern for safety and performance; (b) appropriate material selection and a mold design optimized for the chosen material to achieve the functional design goal; (c) maximum functionality; and (d) optimum material usage.

31.     The DEFENDANTS failed to account for  material properties and  failed to utilize design considerations  applicable to the plastic material from which the coupling nuts were made, which were well known and commonly utilized at the time the coupling nuts were designed, including but not limited to choice of materials, proper mold design, localized concentration of stress, avoiding sharp angles, notch sensitivity, material creep over time, crazing and crack propagation over time, in the design of the plastic coupling nuts.

32.     As the result of the DEFENDANTS failing to account for the material properties and failure to utilize the design considerations which were well known and commonly utilized at the time the coupling nuts were designed, the coupling nuts, including those of Schedule A Plaintiffs' Insureds, were prone to failure from the time such coupling nuts were put into use and over time after being put into use.

33.     As the result of the propensity for failure from the time such coupling nuts were put into use and over time after being put into use, the coupling nuts, including those of Schedule A

Electronically Filed - St Louis County - October 14, 2019 - 03:27 PM

Plaintiffs' Insureds, were unreasonably dangerous, defective and not fit for the intended, anticipated and reasonably foreseeable use of the coupling nut.

34.     By utilizing better and economically feasible material choices, accounting for material properties and utilizing design considerations, which were well known and commonly used at the time the coupling was designed, a coupling nut that was fit for its intended, anticipated and reasonably foreseeable use, including foreseeable misuses, and was not prone to failure, was practical and feasible to design, market, distribute and sell.

35.     Despite extensive instruction to the contrary from the plastics industry found in off-the-shelf design and material guides, as well as DEFENDANTS' knowledge that repeated coupling nut failures were being reported each year, DEFENDANTS continued to manufacture the defective coupling nut and the defects caused the coupling nut to repeatedly fracture in near uniform fashion after routine installation.

36.     DEFENDANTS' defectively designed plastic coupling nuts remain in homes and other buildings throughout the United States, and they will ultimately fail due to creep and creep rupture.

37.     DEFENDANTS knew that their plastic coupling nuts, including those of Schedule A Plaintiffs' Insureds, presented excessive preventable hazards. Specifically, DEFENDANTS knew that the plastic coupling nut was susceptible to circumferential fracture and that the installation instructions and warnings failed to provide the installer with sufficient information to safely install the plastic coupling nut and/or timely replace it before it failed.

38.     Despite their knowledge, DEFENDANTS never provided any public warnings about the risk of the plastic coupling nut's failure and also never instituted a recall to inspect, repair, or replace the knowingly defective plastic coupling nuts. As a result, homes and buildings

Electronically Filed - St Louis County - October 14, 2019 - 03:27 PM

throughout the United States are exposed to, and continue to suffer, catastrophic water damage due to the failure of DEFENDANTS' defective plastic coupling nuts.

39.     DEFENDANTS do not instruct their customers to inspect their water supply lines for signs of failure or warn them of the water supply lines' susceptibility to failure.

40.     DEFENDANTS had a duty to adequately warn consumers, purchasers, and users of their water supply lines, including Schedule A Plaintiffs' Insureds, as to how they could fail, why they can fail, and what can happen if they fail because of their defective nature.

41.     Similarly, DEFENDANTS had a duty to adequately instruct consumers, purchasers, and users of their water supply lines, including Schedule A Plaintiffs' Insureds, as to how to properly install the water supply lines, how to properly maintain the water supply lines, how to prevent the coupling nut from failing and what to look for before the failure occurred.

42.     The reasonable expectation of a consumer of the water supply lines, including Schedule A Plaintiffs' Insureds, is that the life expectancy of a properly designed supply line connected to a plumbing fixture, a toilet for example, will equal or surpass that of the toilet, unless warned or informed by the manufacturer otherwise.

## FACTUAL ALLEGATIONS

43.     At all times relevant hereto, Schedule A Plaintiffs' Insureds owned and/or occupied their respective Properties listed on Schedule A.

44.     Prior to the dates of losses, DEFENDANTS designed, engineered, manufactured, sold, distributed, marketed, packaged, labeled, constructed, tested, inspected, warranted, performed other work on, and thus placed in the stream of commerce, water supply lines which were connected to plumbing fixtures at the Properties.

Electronically Filed - St Louis County - October 14, 2019 - 03:27 PM

45.     On or about the dates of loss, water leaks occurred within the Properties and originated at the fixture or appliance water supply line.

46.     The failure of the water supply lines caused the water leaks.

47.     The water leaks resulted in significant damage to the Properties and personal property of Schedule A Plaintiffs' Insureds.

48.     Plaintiffs received claims upon the insurance policies issued by the Plaintiffs for the damage to real and personal property caused by the failure of these water supply lines, including loss of use of the home or building, cost of cleanup and repairs, and other incidental and consequential losses suffered by the insured as the result of the water supply line failure, covered under the policy on which the claims are made.

49.     Plaintiffs paid the claims of their insureds made in connection with the failure of these water supply lines and the damages and losses resulting from such failures, as per the terms of the insurance policies issued by the plaintiffs and the plaintiffs are both equitably and contractually subrogated to the rights of their insureds to the extent of such payments and may bring this action.

50.     Schedule A Plaintiffs' Insureds are in the class of persons that DEFENDANTS should reasonably have foreseen as being subject to the harms caused by the unreasonably dangerous and defective condition of DEFENDANTS' water supply lines.

51.     DEFENDANTS, at all times material hereto, were regularly engaged in the business of designing, manufacturing, packaging, labeling and distributing the subject water supply lines.

52.     The water supply lines were in unreasonably dangerous and defective condition, including those of Schedule A Plaintiffs' Insureds,  and were not fit for the intended, anticipated

Electronically Filed - St Louis County - October 14, 2019 - 03:27 PM

and reasonably foreseeable uses, including foreseeable misuses of the water supply lines at the time the water supply lines left the possession and control of the DEFENDANTS.

53.    DEFENDANTS' water supply lines were expected to and did reach the Schedule A Plaintiffs' Insureds without substantial alteration in the condition in which the water supply lines were sold by DEFENDANTS.

54.    At all times material hereto, DEFENDANTS' water supply lines, including those of Schedule A Plaintiffs' Insureds, were installed and placed in use without substantial alteration.

55.    At all times material hereto, DEFENDANTS' water supply lines, including those of Schedule A Plaintiffs' Insureds, were used for the intended, anticipated and reasonably foreseeable use of such water supply lines.

56.    The DEFENDANTS' water supply lines were reasonably expected by purchasers and users, including Schedule A Plaintiffs' Insureds, to have a useful life equal to or greater than the plumbing fixture to which they were connected, and each water supply line that is the subject of this action failed within and before the expiration of the reasonably expected useful life as anticipated by the purchaser and user.

57.    The water supply lines, which are the subject of this action and failed within and before the expiration of the reasonably expected useful life as anticipated by the purchaser and user, did not, according to any instructions or warnings supplied with the water supply lines, require maintenance, care or replacement within the reasonably expected useful life of the water supply line.

58.    At all relevant times, and prior to the dates of losses listed in Schedule A, DEFENDANTS knew that: (a) the risk of the failure of their water supply lines were substantial due to their inherent defects; (b) Schedule A Plaintiffs' Insureds were unaware of the substantial

Electronically Filed - St Louis County - October 14, 2019 - 03:27 PM

risk that the water supply lines would break; (c) Schedule A Plaintiffs' Insureds had a reasonable expectation that DEFENDANTS would disclose these risks and had cured the defects associated with their products; and (d) Schedule A Plaintiffs' Insureds were unaware that their water supply lines needed to be replaced to avoid sudden potentially catastrophic failure of the water supply lines, or that they had a specific useful life.

59.     The damages sustained by Plaintiffs and Schedule A Plaintiffs' Insureds were directly and proximate caused by and are the natural and foreseeable consequence of the core of common facts surrounding DEFENDANTS' misconduct, including, but not limited to: (a) the water supply lines suffer from a defect known to DEFENDANTS that led to the failure of the plastic coupling nut; (b) the water supply lines were defective for their intended, anticipated and reasonably foreseeable use  at the time of sale; and (c) that DEFENDANTS did not provide adequate warning/instructions concerning the defective nature of the water supply lines.

60.     As a result of the water losses and resultant damages, Plaintiffs have made payments to their Insureds in an amount in excess of $290,000.00 in accordance with the terms and conditions of the insurance policies.

## CAUSES OF ACTION

## COUNT I – STRICT LIABILITY - DESIGN DEFECT
### (BRASSCRAFT)

61.     Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

62.     BRASSCRAFT designed, engineered, manufactured, distributed, marketed, packaged, labeled, constructed, tested, inspected, warranted, and/or sold in the ordinary course of BRASSCRAFT's business, thus placing the water supply lines in the stream of commerce, the defective and unreasonably dangerous water supply lines to Schedule A Plaintiffs' Insureds.

Electronically Filed - St Louis County - October 14, 2019 - 03:27 PM

63.     The water supply lines that BRASSCRAFT designed, engineered, manufactured, distributed, marketed, packaged, labeled, constructed, tested, inspected, warranted, and/or sold, thus placing the water supply lines in the stream of commerce, were defective and unreasonably dangerous in their design, and were defective and unreasonably dangerous when they left BRASSCRAFT's control.

64.     At the times the water supply lines were sold, they were in the same unreasonably dangerous, defective condition when put to their reasonably anticipated use as water supply lines to plumbing fixtures, in which they left BRASSCRAFT's possession and/or control.

65.     Schedule A Plaintiffs' Insureds were members of the class of persons that BRASSCRAFT should reasonably have foreseen as being subject to the harms caused by the water supply lines' defective condition and Schedule A Plaintiffs' Insureds used the water supply lines as reasonably anticipated by BRASSCRAFT as water supply lines to plumbing fixtures.

66.     BRASSCRAFT knew, or should have known, that the water supply lines, including those of Schedule A Plaintiffs' Insureds, contained non-obvious and unreasonable dangers in their design.

67.     BRASSCRAFT is strictly liable to Plaintiffs under R.S.Mo. § 537.60 and other applicable law for the injuries suffered by Plaintiffs because the water supply lines of Schedule A Plaintiffs' Insureds were defective and unreasonably dangerous for their intended use when put to their reasonably anticipated use by Plaintiffs' Insureds as plumbing fixtures.

68.     Defendants' water supply lines, including those of Schedule A Plaintiffs' Insureds, were unreasonably dangerous and defectively designed in one or more of the following ways:

       a.     BRASSCRAFT designed the water supply lines and coupling nuts without concern for safety and performance;

       b.     BRASSCRAFT designed the water supply lines and coupling nuts in a manner that fractures during its intended, anticipated use;

Electronically Filed - St Louis County - October 14, 2019 - 03:27 PM

     c.     BRASSCRAFT designed the water supply lines and coupling nuts without choosing the proper material for their manufacture;

     d.     BRASSCRAFT designed the water supply lines and coupling nuts without adequately accounting for the properties of the materials used for manufacturing of the coupling nuts;

     e.     BRASSCRAFT designed the water supply lines and coupling nuts without mold design optimized to achieve the functional design goal;

     f.     BRASSCRAFT designed the water supply lines and coupling nuts without maximum functionality;

     g.     BRASSCRAFT designed the water supply lines and coupling nuts in a manner that failed to avoid sharp angles and was susceptible to notch sensitivity, material creep over time, and crazing and crack propagation over time;

     h.     BRASSCRAFT designed the water supply lines and coupling nuts without concern for the molds used to manufacture the coupling nuts, thus failing to minimize the occurrence of manufacturing defects;

     i.     BRASSCRAFT failed to design water supply lines and coupling nuts that would have an adequately long useful life;

     j.     BRASSCRAFT designed the water supply lines and coupling nuts without testing the coupling nuts during the design phase so as to verify that it would not fracture during the intended, anticipated use;

     k.     BRASSCRAFT defectively designed the water supply lines in other ways, under the circumstances, to be determined.

69.     As a direct and proximate result of BRASSCRAFT's aforesaid acts and/or omissions, for which BRASSCRAFT is strictly liable, Schedule A Plaintiffs' Insureds suffered damage to their real and personal property, as well as the loss of use of said property, extra expenses, and other incidental and consequential damages in an amount in excess of the minimum jurisdictional limits of this Court.

70.     By virtue of the aforesaid payment and pursuant to the terms of the aforesaid insurance policies, Plaintiffs are legally, equitably, and contractually subrogated to the rights of Schedule A Plaintiffs' Insureds to the extent of such payments.

Electronically Filed - St Louis County - October 14, 2019 - 03:27 PM

71.     In the event that Plaintiffs become obligated to pay additional sums for these losses in the future, Plaintiffs pray for leave to amend this Petition accordingly when the true and exact costs thereof are ascertained.

## COUNT II – STRICT LIABILITY - MANUFACTURING DEFECT
### (BRASSCRAFT)

72.     Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

73.     BRASSCRAFT designed, engineered, manufactured, distributed, marketed, packaged, labeled, constructed, tested, inspected, warranted, and/or sold in the ordinary course of BRASSCRAFT's business, thus placing the water supply lines in the stream of commerce, the defective and unreasonably dangerous water supply lines, to Schedule A Plaintiffs' Insureds.

74.     The water supply lines that BRASSCRAFT designed, engineered, manufactured, constructed, tested, inspected, packaged, labeled, marketed, distributed, sold, warranted, and/or performed, thus placing the water supply lines in the stream of commerce, were defective and unreasonably dangerous in their manufacturing process, and were defective and unreasonably dangerous when they left BRASSCRAFT's control.

75.     At the times the water supply lines were sold, including those of Schedule A Plaintiffs' Insureds, they were in the same unreasonably dangerous, defective condition when put to their reasonably anticipated use as water supply lines to plumbing fixtures, in which they left BRASSCRAFT's possession and/or control.

76.     Schedule A Plaintiffs' Insureds were members of the class of persons that BRASSCRAFT should reasonably have foreseen as being subject to the harms caused by the water supply lines' defective condition and Schedule A Plaintiffs' Insureds used the water supply lines as reasonably anticipated by BRASSCRAFT as water supply lines to plumbing fixtures.

Electronically Filed - St Louis County - October 14, 2019 - 03:27 PM

77.     BRASSCRAFT knew, or should have known, that the water supply lines, including those of Schedule A Plaintiffs' Insureds, contained non-obvious and unreasonable dangers in the manner by which they were manufactured.

78.     BRASSCRAFT is strictly liable to Plaintiffs under R.S.Mo. § 537.60 and other applicable law for the injuries suffered by Plaintiffs because the water supply lines of Schedule A Plaintiffs' Insureds were defective and unreasonably dangerous for their intended use when put to their reasonably anticipated use by Plaintiffs' Insureds as plumbing fixtures.

79.     Defendants' water supply lines, including those of Schedule A Plaintiffs' Insureds, were defectively and unreasonably dangerously manufactured in one or more of the following ways:

a.     BRASSCRAFT did not manufacture the water supply lines and coupling nuts using proper operating parameters;

b.     BRASSCRAFT manufactured the water supply lines and coupling nuts without using proper mold temperature controls;

c.     BRASSCRAFT manufactured the water supply lines and coupling nuts so as to create defective and unreasonably dangerous voids;

d.     BRASSCRAFT manufactured the water supply lines without proper design specifications; and

e.     BRASSCRAFT manufactured the water supply lines and coupling nuts so as to create a final product that was defective and unreasonably dangerously brittle; and

f.     BRASSCRAFT defectively and unreasonably dangerously manufactured the water supply lines in other ways, under the circumstances, to be determined.

80.     As a direct and proximate result of BRASSCRAFT's aforesaid acts and/or omissions, for which BRASSCRAFT is strictly liable, Schedule A Plaintiffs' Insureds suffered damage to their real and personal property, as well as the loss of use of said property, extra expenses, and other incidental and consequential damages in an amount in excess of the minimum jurisdictional limits of this Court.

Electronically Filed - St Louis County - October 14, 2019 - 03:27 PM

81.     By virtue of the aforesaid payment and pursuant to the terms of the aforesaid insurance policies, Plaintiffs are legally, equitably, and contractually subrogated to the rights of Schedule A Plaintiffs' Insureds to the extent of such payments.

82.     In the event that Plaintiffs become obligated to pay additional sums for these losses in the future, Plaintiffs pray for leave to amend this Petition accordingly when the true and exact costs thereof are ascertained.

### COUNT III – STRICT LIABILITY - FAILURE TO WARN/INSTRUCT OR INADEQUATE WARNING/INSTRUCTION
### (BRASSCRAFT)

83.     Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

84.     BRASSCRAFT designed, engineered, manufactured, distributed, marketed, packaged, labeled, constructed, tested, inspected, warranted, and/or sold in the ordinary course of BRASSCRAFT's business, thus placing the water supply lines in the stream of commerce, the defective and unreasonably dangerous water supply lines, to Schedule A Plaintiffs' Insureds.

85.     The water supply lines that BRASSCRAFT designed, engineered, manufactured, distributed, marketed, packaged, labeled, constructed, tested, inspected, warranted, and/or sold were defective and unreasonably dangerous in their design and manufacture, and were defective and unreasonably dangerous when they left BRASSCRAFT's control.

86.     At the times the water supply lines were sold, they were in the same unreasonably dangerous, defective condition when put to their reasonably anticipated use as water supply lines to plumbing fixtures, in which they left BRASSCRAFT's possession and/or control.

87.     Schedule A Plaintiffs' Insureds were members of the class of persons that BRASSCRAFT should reasonably have foreseen as being subject to the harms caused by the water

Electronically Filed - St Louis County - October 14, 2019 - 03:27 PM

supply lines' defective condition and Schedule A Plaintiffs' Insureds used the water supply lines as reasonably anticipated by BRASSCRAFT as water supply lines to plumbing fixtures.

88.     BRASSCRAFT knew, or should have known, that the water supply lines contained a non-obvious and unreasonably dangerous condition, that consumers, including Schedule A Plaintiffs' Insureds, would not comprehend the danger without adequate warnings/instructions when putting the water supply lines to their reasonably anticipated use without knowledge of the water supply lines' characteristics.

89.     BRASSCRAFT knew, or should have known, that the water supply lines were highly susceptible to failure under expected installation and use conditions and that consumers, including Schedule A Plaintiffs' Insureds, would not repeatedly replace their water supply lines without adequate warnings/instructions.

90.     BRASSCRAFT knew, or should have known, that consumers, including Schedule A Plaintiffs' Insureds, would use the water supply lines without first inspecting their durability.

91.     BRASSCRAFT failed to inform consumers, including Schedule A Plaintiffs' Insureds, as to the water supply lines' susceptibility to sudden catastrophic failure.

92.     BRASSCRAFT failed to warn consumers, including Schedule A Plaintiffs' Insureds, that it was necessary to periodically inspect and replace the water supply lines, even if the water supply lines had not yet failed or even if the water supply lines were still within the warranty period measured after the consumer's date of purchase of the water supply lines.

93.     The water supply lines were defective and unreasonably dangerous due to inadequate warnings/instructions, inadequate inspection and testing, and inadequate reporting regarding the results of quality control testing and safety inspections, or lack thereof.

Electronically Filed - St Louis County - October 14, 2019 - 03:27 PM

94.     Had Schedule A Plaintiffs' Insureds been adequately warned/instructed concerning the likelihood that the water supply lines would fail, they would have taken steps to avoid damages by replacing the water supply lines or by not purchasing them.

95.     BRASSCRAFT, after learning that its water supply lines could suddenly fail as a result of a circumferential fracture, had a post-sale duty to warn consumers of the possibility that catastrophic failure and flooding could result from the failure of their water supply lines, even when used for their intended purpose.

96.     BRASSCRAFT's water supply lines were distributed with no warnings/instructions or, if any, with inadequate warnings/instructions.

97.     The water supply lines were defective and unreasonably dangerous because BRASSCRAFT failed to properly package and/or label the water supply lines to give reasonable warnings of danger about the water supply lines; and/or failed to give reasonably complete instructions on proper use of the water supply lines; when BRASSCRAFT, by exercising reasonable diligence, could have made such warnings and/or instructions available to Schedule A Plaintiffs' Insureds.

98.     A warning/instruction is adequate if it reasonably discloses all inherent risks and if the product is safe when used as directed. A warning/instruction can be defective and/or inadequate based on its content or the manner in which the warning/instruction is communicated.  An adequate warning/instruction not only conveys a fair indication of the nature of the dangers involved but also the degree of intensity demanded by the nature of the risk.  Warnings/instructions may also be inadequate based on their form, manner of expression or lack of exigency.

99.     The water supply lines were used by Schedule A Plaintiffs' Insureds in a reasonably anticipated manner.

Electronically Filed - St Louis County - October 14, 2019 - 03:27 PM

100.    BRASSCRAFT is strictly liable to Plaintiffs under R.S.Mo.§ 537.60 and other applicable law for the injuries suffered by Plaintiffs because the water supply lines of Schedule A Plaintiffs' Insureds were defective and unreasonably dangerous for their intended use and BRASSCRAFT'S failure to warn Plaintiffs' Insureds of this condition proximately caused the aforementioned damages.

101.    BRASSCRAFT's water supply lines provided no warnings/instructions or the warning was inadequate or provided inadequate instructions as to the coupling nut in one or more of the following ways:

    a.    Failing to warn purchasers and users of the useful life of the water supply line and the coupling nut, the likelihood of failure after expiration of the useful life and the need to replace the water supply line before the expiration of useful life to avoid damage to their property;

    b.    Failing to warn purchasers and users of the risk of causing a fracture of the coupling nut by over tightening during installation and failing to advise purchasers and users of how to install the water supply lines so as not to over tighten the coupling nut and cause such fractures and damage to their property;

    c.    Failing to warn purchasers and users never to use a wrench or tool to tighten the plastic coupling nut because doing so would likely cause failure and damage to their property;

    d.    Failing to warn purchasers and users that certain additives commonly found in the water supply and certain household chemicals promote failure and damage to their property; and

    e.    Failing to warn purchasers and users that the coupling nut and water supply line was substantially more prone to failure and causing damage to their property than traditional metal plumbing and other available products.

102.    As a direct and proximate result of BRASSCRAFT's aforesaid acts and/or omissions, for which BRASSCRAFT is strictly liable, Schedule A Plaintiffs' Insureds suffered damage to their real and personal property, as well as the loss of use of said property, extra expenses, and other incidental and consequential damages in an amount in excess of the minimum jurisdictional limits of this Court.

Electronically Filed - St Louis County - October 14, 2019 - 03:27 PM

103.    By virtue of the aforesaid payment and pursuant to the terms of the aforesaid insurance policies, Plaintiffs are legally, equitably, and contractually subrogated to the rights of Schedule A Plaintiffs' Insureds to the extent of such payments.

104.    In the event that Plaintiffs become obligated to pay additional sums for these losses in the future, Schedule A Plaintiffs pray for leave to amend this Petition accordingly when the true and exact costs thereof are ascertained.

**COUNT IV –NEGLIGENT DESIGN**
**(BRASSCRAFT)**

105.    Schedule A Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

106.    Schedule A Plaintiffs' Insureds were members of the class of persons that BRASSCRAFT should reasonably have foreseen as being subject to the harms caused by the water supply lines' defective condition.

107.    The foreseeable risks of harm to property associated with the failure of these water supply lines, including those of Schedule A Plaintiffs' Insureds, and the severity of such harm was substantial and warranted adequate care in the design of these water supply lines so as to minimize the risk of failures and resulting harm.

108.    The likelihood of the occurrence of harm to real and personal property as the result of failure of these water supply lines, including those of Schedule A Plaintiffs' Insureds, was foreseeable by the manufacturer at the time the water supply lines were designed, manufactured and distributed.

109.    In the exercise of ordinary care, reasonable and feasible alternative designs were available and readily achievable at the time these coupling nuts were designed.

Electronically Filed - St Louis County - October 14, 2019 - 03:27 PM

110.    The available and practical reasonable alternative designs would have eliminated the propensity for failure of these water supply lines, including those of Schedule A Plaintiffs' Insureds.

111.    As the designer, manufacturer and/or seller of these water supply lines, including those of Schedule A Plaintiffs' Insureds, it was the duty of BRASSCRAFT to:

a.      Use reasonable care in the design and engineering of its water supply lines, so that they would be reasonably fit for the intended, anticipated and reasonably foreseeable uses, including foreseeable misuses of the water supply lines;

b.      Use reasonable care in the design and engineering of its water supply lines such that they would be equipped with all necessary and properly functioning safeguards which would prevent the plastic coupling nut from cracking and failing while it was being properly used; and

c.      Use reasonable care in the design and engineering of its water supply lines as to eliminate any hazard that would permit the plastic coupling nut to fracture, resulting in damage.

112.    BRASSCRAFT breached these duties in one or more of the following ways:

a.      BRASSCRAFT knew or should have known that its water supply lines were designed without concern for safety and performance;

b.      BRASSCRAFT failed to exercise ordinary care so as to design the coupling nut so that it would not fracture during the intended, anticipated and reasonably foreseeable use, including reasonably foreseeable misuse of the water supply lines.

c.      BRASSCRAFT failed to exercise ordinary care in choosing the material for the manufacture of the coupling nuts;

d.      BRASSCRAFT failed to exercise ordinary care so as to adequately understand the properties of the materials used for the manufacturing of the coupling nuts, and account for the properties of the material used for manufacturing the coupling nuts;

e.      BRASSCRAFT failed to exercise ordinary care so as to  account for design considerations applicable to the material from which the coupling nuts were made which were well known and commonly utilized at the time the coupling nuts were designed, including but not limited to avoiding sharp angles, notch sensitivity, material creep over time, and crazing and crack propagation over time;

Electronically Filed - St Louis County - October 14, 2019 - 03:27 PM

   f.  BRASSCRAFT failed to exercise ordinary care in the design of the molds used to manufacture the coupling nuts so as to minimize the occurrence of manufacturing defects;

   g.  BRASSCRAFT failed to exercise ordinary care so as to design a coupling that which would have an adequately long useful life without failure, to accommodate the reasonable expectation of consumers;

   h.  BRASSCRAFT failed to exercise ordinary care to test the design of the coupling not during the design phase so as to verify that it would not fracture during the intended, anticipated and reasonably foreseeable use, including reasonably foreseeable misuse of the water supply lines; and

   i.  BRASSCRAFT negligently designed the water supply line in other ways, under the circumstances, to be determined.

113. There were practical, economical and technically feasible alternative designs for the water supply lines which would have prevented the damages to Plaintiffs.

114. As a direct and proximate result of BRASSCRAFT's lack of ordinary care and aforesaid negligent acts and/or omissions, for which BRASSCRAFT is liable, Schedule A Plaintiffs' Insureds suffered damage to their real and personal property, as well as the loss of use of said property, extra expenses, and other incidental and consequential damages in an amount in excess of the minimum jurisdictional limits of this Court.

115. By virtue of the aforesaid payment and pursuant to the terms of the aforesaid insurance policies, Schedule A Plaintiffs are legally, equitably, and contractually subrogated to the rights of Schedule A Plaintiffs' Insureds to the extent of such payments.

116. In the event that Schedule A Plaintiffs become obligated to pay additional sums for these losses in the future, Schedule A Plaintiffs pray for leave to amend this Petition accordingly when the true and exact costs thereof are ascertained.

Electronically Filed - St Louis County - October 14, 2019 - 03:27 PM

## COUNT V –NEGLIGENT MANUFACTURE
### (BRASSCRAFT)

117.    Schedule A Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

118.    BRASSCRAFT designed, engineered, manufactured, distributed, marketed, packaged, labeled, constructed, tested, inspected, warranted, and/or sold water supply lines which were used by Schedule A Plaintiffs' Insureds.

119.    In addition to being defective by design, some of the water supply lines sold by BRASSCRAFT also contained manufacturing defects of the coupling nut which, independently caused the coupling nuts to fail and rendered the water supply line unfit for the intended, anticipated and reasonably foreseeable uses, including reasonably foreseeable misuses.

120.    Such manufacturing defects included brittleness of the material, failure of the material to properly fuse at the part line and voids in the material caused by failure to properly maintain the operating temperature of both the molds used to manufacture the coupling nut and the material being injected and the mold.

121.    The water supply lines and coupling nuts, containing manufacturing defects left the possession and control of BRASSCRAFT in such defective condition, and were installed and utilized in such defective condition, without substantial alteration.

122.    Schedule A Plaintiffs' Insureds were members of the class of persons that BRASSCRAFT should reasonably have foreseen as being subject to the harms caused by the water supply lines' defective condition.

123.    The foreseeable risks of harm to property associated with the failure of these water supply lines, including those of Schedule A Plaintiffs' Insureds, and the severity of such harm was

Electronically Filed - St Louis County - October 14, 2019 - 03:27 PM

substantial and warranted adequate care in the manufacture of these water supply lines so as to minimize the risk of failures and resulting harm.

124.     The likelihood of the occurrence of harm to real and personal property as the result of failure of these water supply lines, including those of Schedule A Plaintiffs' Insureds, was foreseeable by the manufacturer at the time the water supply lines were manufactured and distributed.

125.     As the manufacturer of these water supply lines, including those of Schedule A Plaintiffs' Insureds, it was the duty of BRASSCRAFT to:

a.      Use reasonable care in the manufacturing and assembling of its water supply lines, so that they would be reasonably fit for intended, anticipated and reasonably foreseeable uses, including foreseeable misuses of the water supply lines; and

b.      Use reasonable care in the manufacturing and assembling of its water supply lines as to eliminate any hazard that would permit the plastic coupling nut to fracture, resulting in damage.

126.     BRASSCRAFT breached these duties in one or more of the following ways:

a.      BRASSCRAFT knew or should have known that its water supply lines were manufactured without concern for proper operating parameters;

b.      BRASSCRAFT failed to exercise ordinary care during the manufacturing the coupling nuts to properly control mold and material temperatures.

c.      BRASSCRAFT failed to exercise ordinary care in quality control so as to identify defectively manufactured coupling nuts before distribution.

d.      BRASSCRAFT failed to exercise ordinary care in monitoring the manufacturing process so as to ensure quality control during manufacturing.

e.      BRASSCRAFT knew or should have known that its water supply lines were manufactured without concern for the creation of voids;

f.      BRASSCRAFT knew or should have known that its water supply lines were manufactured without concern for production complying with design specifications;

g.      BRASSCRAFT knew or should have known that its water supply lines were manufactured without concern for the final product becoming more brittle; and

Electronically Filed - St Louis County - October 14, 2019 - 03:27 PM

h.      BRASSCRAFT negligently manufactured the water supply line in other ways, under the circumstances, to be determined.

127.    As a direct and proximate result of BRASSCRAFT's aforesaid negligent acts and/or omissions, for which BRASSCRAFT is liable, Schedule A Plaintiffs' Insureds suffered damage to their real and personal property, as well as the loss of use of said property, extra expenses, and other incidental and consequential damages in an amount in excess of the minimum jurisdictional limits of this Court.

128.    By virtue of the aforesaid payment and pursuant to the terms of the aforesaid insurance policies, Schedule A Plaintiffs are legally, equitably, and contractually subrogated to the rights of Schedule A Plaintiffs' Insureds to the extent of such payments.

129.    In the event that Schedule A Plaintiffs become obligated to pay additional sums for these losses in the future, Schedule A Plaintiffs pray for leave to amend this Petition accordingly when the true and exact costs thereof are ascertained.

### COUNT VI – NEGLIGENT FAILURE TO WARN/INSTRUCT OR INADEQUATE WARNING/INSTRUCTION (BRASSCRAFT)

130.    Schedule A Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

131.    BRASSCRAFT designed, engineered, manufactured, distributed, marketed, packaged, labeled, constructed, tested, inspected, warranted, and/or sold in the ordinary course of BRASSCRAFT's business, thus placing the water supply lines in the stream of commerce, the defective and unreasonably dangerous water supply lines, to Schedule A Plaintiffs' Insureds.

132.    Schedule A Plaintiffs' Insureds were members of the class of persons that BRASSCRAFT should reasonably have foreseen as being subject to the harms caused by the water supply lines' defective condition.

Electronically Filed - St Louis County - October 14, 2019 - 03:27 PM

133.   BRASSCRAFT knew, or should have known, that the water supply lines contained latent hazards and defects and that consumers would not comprehend the latent hazards and defects without adequate warnings/instructions.

134.   BRASSCRAFT knew, or should have known, that the water supply lines, including those of Schedule A Plaintiffs' Insureds, were highly susceptible to failure under expected installation and use conditions and that consumers would not repeatedly replace their water supply lines without adequate warnings/instructions.

135.   BRASSCRAFT knew, or should have known, that Schedule A Plaintiffs' Insureds would use the water supply lines without first inspecting their durability.

136.    BRASSCRAFT failed to inform Schedule A Plaintiffs' Insureds as to the water supply lines' susceptibility to sudden catastrophic failure.

137.   BRASSCRAFT failed to warn/instruct consumers, including Schedule A Plaintiffs' Insureds, that it was necessary to periodically inspect and replace the water supply lines, even if the water supply lines had not yet failed or even if the water supply lines were still within the warranty period measured after the consumer's date of purchase of the water supply lines.

138.   BRASSCRAFT had a duty to supply necessary and adequate warnings of risks and hazards associated with the use of the water supply lines, including those of Schedule A Plaintiffs' Insureds, which were known or reasonably knowable to BRASSCRAFT and which were likely unknown to or unappreciated by the purchasers and users of the water supply lines.

139.   BRASSCRAFT breached this duty to Schedule A Plaintiffs' Insureds, to supply necessary and adequate warnings by;

      a.   Failing to warn purchasers and users of the useful life of the water supply line and the coupling nut, the likelihood of failure after expiration of the useful life and the need to replace the water supply line before the expiration of useful life to avoid damage to their property;

Electronically Filed - St Louis County - October 14, 2019 - 03:27 PM

b.      Failing to warn purchasers and users of the risk of causing a fracture of the coupling nut by over tightening during installation and failing to advise purchasers and users of how to install the water supply lines so as not to over tighten the coupling nut and cause such fractures and damage to their property;

c.      Failing to warn purchasers and users never to use a wrench or tool to tighten the plastic coupling nut because doing so would likely cause failure and damage to their property;

d.      Failing to warn purchasers and users that certain additives commonly found in the water supply and certain household chemicals promote failure and damage to their property; and

e.      Failing to warn purchasers and users that the coupling nut and water supply line was substantially more prone to failure and causing damage to their property than traditional metal plumbing and other available products.

140.    The water supply lines were defective and unfit for the intended, anticipated and reasonably foreseeable uses, including reasonably foreseeable misuses of the water supply lines due to due to the lack of and inadequacy of warnings and instructions.

141.    Had necessary and adequate warnings been supplied, the purchasers and users of the water supply lines, including Schedule A Plaintiffs' Insureds, would have either not purchased and not used the water supply lines or would have otherwise avoided harm to their property.

142.    As a direct and proximate result of BRASSCRAFT's failure to supply necessary and adequate warnings and instructions, Schedule A Plaintiffs' Insureds suffered damage to their real and personal property, as well as the loss of use of said property, extra expenses, and other incidental and consequential damages in an amount in excess of the minimum jurisdictional limits of this Court.

143.    By virtue of the aforesaid payment and pursuant to the terms of the aforesaid insurance policies, Schedule A Plaintiffs are legally, equitably, and contractually subrogated to the rights of Schedule A Plaintiffs' Insureds to the extent of such payments.

Electronically Filed - St Louis County - October 14, 2019 - 03:27 PM

144.    In the event that Schedule A Plaintiffs become obligated to pay additional sums for these losses in the future, Schedule A Plaintiffs pray for leave to amend this Petition accordingly when the true and exact costs thereof are ascertained.

### COUNT VII – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (BRASSCRAFT)

145.    Schedule A Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

146.    At the time BRASSCRAFT designed, engineered, manufactured, assembled, sold, and distributed the water supply lines and placed them into the stream of commerce, BRASSCRAFT impliedly, warranted and represented that its water supply lines were merchantable at the time of sale, reasonably, fit and suitable for intended, anticipated and reasonably foreseeable use, including reasonably foreseeable misuse that they were in no way dangerous or defective in design or manufacture; nor were they dangerous or defective due to absent or inadequate warnings, guarding and/or instructions.

147.    The risk of damage to the user's property associated with failure of the water supply lines and coupling nuts and the severity of this risk was foreseeable by BRASSCRAFT.

148.    The likelihood of the occurrence of the failure of the coupling nut on the water supply line and resulting damage to the user's property was foreseeable by BRASSCRAFT at the time it designed, manufactured and sold these water supply lines.

149.    There were available, at the time these water supply lines were designed manufactured and sold, practical and reasonable alternative designs that would eliminate the failure and risk of property damage to the user.

150.    The failure of BRASSCRAFT to utilize the available alternative designs which were practical, technically feasible and economically feasible rendered these water supply lines

Electronically Filed - St Louis County - October 14, 2019 - 03:27 PM

not merchantable for sale, defective, prone to failure and unfit for the intended, anticipated and recently foreseeable uses, including reasonably foreseeable misuses of such water supply lines.

151.     The water supply lines and coupling nuts were also prone to failure and unfit for the intended, anticipated and reasonably foreseeable uses, including reasonably foreseeable misuses of such water supply lines by reason of lack of or inadequacy of warnings and instructions, and thus not merchantable at the time of sale, as described in the previous paragraphs.

152.     The coupling nuts and associated water supply lines were not only not merchantable and  defective by design, but also not merchantable, defective and unfit for their intended, anticipated and reasonably foreseeable uses, including reasonably foreseeable misuses by reason of manufacturing defects, including but not limited to failure to control mold and material temperatures during manufacturing, voids within the material, incomplete fusing of the material, brittleness of the material, failure to monitor the manufacturing process for quality control during the process, and failure to employ adequate quality control so as to identify defectively manufactured coupling nuts before distribution.

153.     The above listed warranties implied by law were breached by BRASSCRAFT in that the water supply lines, that caused Plaintiffs to suffer damages, were defective and prone to failure during the intended, anticipated and reasonably foreseeable use, including reasonably foreseeable misuses of the water supply lines and thus were not merchantable at the time of sale.

154.     As a direct and proximate result of and as the natural and foreseeable consequence of  BRASSCRAFT's aforesaid breach of warranty, for which BRASSCRAFT is liable, Schedule A Plaintiffs' Insureds suffered damage to their real and personal property, as well as the loss of use of said property, extra expenses, and other incidental and consequential damages in an amount in excess of the minimum jurisdictional limits of this Court.

Electronically Filed - St Louis County - October 14, 2019 - 03:27 PM

155.    DEFENDANTS have notice of the aforesaid breach of warranty as to Schedule A Plaintiffs' Insureds and consumers at large.

156.    By virtue of the aforesaid payment and pursuant to the terms of the aforesaid insurance policies, Schedule A Plaintiffs are legally, equitably, and contractually subrogated to the rights of Schedule A Plaintiffs' Insureds to the extent of such payments.

157.    In the event that Schedule A Plaintiffs become obligated to pay additional sums for these losses in the future, Schedule A Plaintiffs pray for leave to amend this Petition accordingly when the true and exact costs thereof are ascertained.

### COUNT VIII – STRICT LIABILITY - DESIGN DEFECT
### (MASCO)

158.    Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

159.    MASCO designed, engineered, manufactured, distributed, marketed, packaged, labeled, constructed, tested, inspected, warranted, and/or sold in the ordinary course of MASCO's business, thus placing the water supply lines in the stream of commerce, the defective and unreasonably dangerous water supply lines to Schedule A Plaintiffs' Insureds.

160.    The water supply lines that MASCO designed, engineered, manufactured, distributed, marketed, packaged, labeled, constructed, tested, inspected, warranted, and/or sold, thus placing the water supply lines in the stream of commerce, were defective and unreasonably dangerous in their design, and were defective and unreasonably dangerous when they left MASCO's control.

161.    At the times the water supply lines were sold, they were in the same unreasonably dangerous, defective condition when put to their reasonably anticipated use as water supply lines to plumbing fixtures, in which they left MASCO's possession and/or control.

Electronically Filed - St Louis County - October 14, 2019 - 03:27 PM

162.    Schedule A Plaintiffs' Insureds were members of the class of persons that MASCO should reasonably have foreseen as being subject to the harms caused by the water supply lines' defective condition and Schedule A Plaintiffs' Insureds used the water supply lines as reasonably anticipated by MASCO as water supply lines to plumbing fixtures.

163.    MASCO knew, or should have known, that the water supply lines, including those of Schedule A Plaintiffs' Insureds, contained non-obvious and unreasonable dangers in their design.

164.    MASCO is strictly liable to Plaintiffs under R.S.Mo.§ 537.60 and other applicable law for the injuries suffered by Plaintiffs because the water supply lines of Schedule A Plaintiffs' Insureds were defective and unreasonably dangerous for their intended use when put to their reasonably anticipated use by Plaintiffs' Insureds as plumbing fixtures.

165.    DEFENDANTS' water supply lines, including those of Schedule A Plaintiffs' Insureds, were unreasonably dangerous and defectively designed in one or more of the following ways:

      a.    MASCO designed the water supply lines and coupling nuts without concern for safety and performance;

      b.    MASCO designed the water supply lines and coupling nuts in a manner that fractures during its intended, anticipated use;

      c.    MASCO designed the water supply lines and coupling nuts without choosing the proper material for their manufacture;

      d.    MASCO designed the water supply lines and coupling nuts without adequately accounting for the properties of the materials used for manufacturing of the coupling nuts;

      e.    MASCO designed the water supply lines and coupling nuts without mold design optimized to achieve the functional design goal;

      f.    MASCO designed the water supply lines and coupling nuts without maximum functionality;

Electronically Filed - St Louis County - October 14, 2019 - 03:27 PM

g.      MASCO designed the water supply lines and coupling nuts in a manner that failed to avoid sharp angles and was susceptible to notch sensitivity, material creep over time, and crazing and crack propagation over time;

h.      MASCO designed the water supply lines and coupling nuts without concern for the molds used to manufacture the coupling nuts, thus failing to minimize the occurrence of manufacturing defects;

i.      MASCO failed to design water supply lines and coupling nuts that would have an adequately long useful life;

j.      MASCO designed the water supply lines and coupling nuts without testing the coupling nuts during the design phase so as to verify that it would not fracture during the intended, anticipated use;

k.      MASCO defectively designed the water supply lines in other ways, under the circumstances, to be determined.

166.    As a direct and proximate result of MASCO's aforesaid acts and/or omissions, for which MASCO is strictly liable, Schedule A Plaintiffs' Insureds suffered damage to their real and personal property, as well as the loss of use of said property, extra expenses, and other incidental and consequential damages in an amount in excess of the minimum jurisdictional limits of this Court.

167.    By virtue of the aforesaid payment and pursuant to the terms of the aforesaid insurance policies, Plaintiffs are legally, equitably, and contractually subrogated to the rights of Schedule A Plaintiffs' Insureds to the extent of such payments.

168.    In the event that Plaintiffs become obligated to pay additional sums for these losses in the future, Plaintiffs pray for leave to amend this Petition accordingly when the true and exact costs thereof are ascertained.

## COUNT IX – STRICT LIABILITY - MANUFACTURING DEFECT
### (MASCO)

169.    Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

Electronically Filed - St Louis County - October 14, 2019 - 03:27 PM

170.    MASCO designed, engineered, manufactured, distributed, marketed, packaged, labeled, constructed, tested, inspected, warranted, and/or sold in the ordinary course of MASCO's business, thus placing the water supply lines in the stream of commerce, the defective and unreasonably dangerous water supply lines, to Schedule A Plaintiffs' Insureds.

171.    The water supply lines that MASCO designed, engineered, manufactured, constructed, tested, inspected, packaged, labeled, marketed, distributed, sold, warranted, and/or performed, thus placing the water supply lines in the stream of commerce, were defective and unreasonably dangerous in their manufacturing process, and were defective and unreasonably dangerous when they left MASCO's control.

172.    At the times the water supply lines were sold, they were in the same unreasonably dangerous, defective condition when put to their reasonably anticipated use as water supply lines to plumbing fixtures, in which they left MASCO's possession and/or control.

173.    Schedule A Plaintiffs' Insureds were members of the class of persons that MASCO should reasonably have foreseen as being subject to the harms caused by the water supply lines' defective condition and Schedule A Plaintiffs' Insureds used the water supply lines as reasonably anticipated by MASCO as water supply lines to plumbing fixtures.

174.    MASCO knew, or should have known, that the water supply lines contained non-obvious and unreasonable dangers in the manner by which they were manufactured.

175.    MASCO is strictly liable to Plaintiffs under R.S.Mo.§ 537.60 and other applicable law for the injuries suffered by Plaintiffs because the water supply lines of Schedule A Plaintiffs' Insureds were defective and unreasonably dangerous for their intended use when put to their reasonably anticipated use by Plaintiffs' Insureds as plumbing fixtures.

Electronically Filed - St Louis County - October 14, 2019 - 03:27 PM

176.    MASCO's water supply lines, including those of Schedule A Plaintiffs' Insureds, were defectively and unreasonably dangerously manufactured in one or more of the following ways:

        a.    MASCO did not manufacture the water supply lines and coupling nuts using proper operating parameters;

        b.    MASCO manufactured the water supply lines and coupling nuts without using proper mold temperature controls;

        c.    MASCO manufactured the water supply lines and coupling nuts so as to create defective and unreasonably dangerous voids;

        d.    MASCO manufactured the water supply lines without proper design specifications; and

        e.    MASCO manufactured the water supply lines and coupling nuts so as to create a final product that was defective and unreasonably dangerously brittle; and

        f.    MASCO defectively and unreasonably dangerously manufactured the water supply lines in other ways, under the circumstances, to be determined.

177.    As a direct and proximate result of MASCO's aforesaid acts and/or omissions, for which MASCO is strictly liable, Schedule A Plaintiffs' Insureds suffered damage to their real and personal property, as well as the loss of use of said property, extra expenses, and other incidental and consequential damages in an amount in excess of the minimum jurisdictional limits of this Court.

178.    By virtue of the aforesaid payment and pursuant to the terms of the aforesaid insurance policies, Plaintiffs are legally, equitably, and contractually subrogated to the rights of Schedule A Plaintiffs' Insureds to the extent of such payments.

179.    In the event that Plaintiffs become obligated to pay additional sums for these losses in the future, Plaintiffs pray for leave to amend this Petition accordingly when the true and exact costs thereof are ascertained.

Electronically Filed - St Louis County - October 14, 2019 - 03:27 PM

## COUNT X – STRICT LIABILITY - FAILURE TO WARN/INSTRUCT OR INADEQUATE WARNING/INSTRUCTION
### (MASCO)

180.     Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

181.    MASCO designed, engineered, manufactured, distributed, marketed, packaged, labeled, constructed, tested, inspected, warranted, and/or sold in the ordinary course of MASCO's business, thus placing the water supply lines in the stream of commerce, the defective and unreasonably dangerous water supply lines, to Schedule A Plaintiffs' Insureds.

182.    The water supply lines that MASCO designed, engineered, manufactured, distributed, marketed, packaged, labeled, constructed, tested, inspected, warranted, and/or sold were defective and unreasonably dangerous in their design and manufacture, and were defective and unreasonably dangerous when they left MASCO's control.

183.    At the times the water supply lines were sold, they were in the same unreasonably dangerous, defective condition when put to their reasonably anticipated use as water supply lines to plumbing fixtures, in which they left MASCO's possession and/or control.

184.    Schedule A Plaintiffs' Insureds were members of the class of persons that MASCO should reasonably have foreseen as being subject to the harms caused by the water supply lines' defective condition and Schedule A Plaintiffs' Insureds used the water supply lines as reasonably anticipated by MASCO as water supply lines to plumbing fixtures.

185.    MASCO knew, or should have known, that the water supply lines contained a non-obvious and unreasonably dangerous condition, that consumers, including Schedule A Plaintiffs' Insureds, would not comprehend the danger without adequate warnings/instructions when putting

Electronically Filed - St Louis County - October 14, 2019 - 03:27 PM

the water supply lines to their reasonably anticipated use without knowledge of the water supply lines' characteristics.

186.   MASCO knew, or should have known, that the water supply lines were highly susceptible to failure under expected installation and use conditions and that consumers, including Schedule A Plaintiffs' Insureds, would not repeatedly replace their water supply lines without adequate warnings/instructions.

187.   MASCO knew, or should have known, that consumers, including Schedule A Plaintiffs' Insureds, would use the water supply lines without first inspecting their durability.

188.   MASCO failed to inform consumers, including Schedule A Plaintiffs' Insureds, as to the water supply lines' susceptibility to sudden catastrophic failure.

189.   MASCO failed to warn consumers, including Schedule A Plaintiffs' Insureds, that it was necessary to periodically inspect and replace the water supply lines, even if the water supply lines had not yet failed or even if the water supply lines were still within the warranty period measured after the consumer's date of purchase of the water supply lines.

190.   The water supply lines were defective and unreasonably dangerous due to inadequate warnings/instructions, inadequate inspection and testing, and inadequate reporting regarding the results of quality control testing and safety inspections, or lack thereof.

191.   Had Schedule A Plaintiffs' Insureds been adequately warned/instructed concerning the likelihood that the water supply lines would fail, they would have taken steps to avoid damages by replacing the water supply lines or by not purchasing them.

192.   MASCO, after learning that its water supply lines could suddenly fail as a result of a circumferential fracture, had a post-sale duty to warn consumers of the possibility that

Electronically Filed - St Louis County - October 14, 2019 - 03:27 PM

catastrophic failure and flooding could result from the failure of their water supply lines, even when used for their intended purpose.

193.    MASCO's water supply lines were distributed with no warnings/instructions or, if any, with inadequate warnings/instructions.

194.    The water supply lines were defective and unreasonably dangerous because MASCO failed to properly package and/or label the water supply lines to give reasonable warnings of danger about the water supply lines; and/or failed to give reasonably complete instructions on proper use of the water supply lines; when MASCO, by exercising reasonable diligence, could have made such warnings and/or instructions available to Schedule A Plaintiffs' Insureds.

195.    A warning/instruction is adequate if it reasonably discloses all inherent risks and if the product is safe when used as directed. A warning/instruction can be defective and/or inadequate based on its content or the manner in which the warning/instruction is communicated.  An adequate warning/instruction not only conveys a fair indication of the nature of the dangers involved but also the degree of intensity demanded by the nature of the risk.  Warnings/instructions may also be inadequate based on their form, manner of expression or lack of exigency.

196.    The water supply lines were used by Schedule A Plaintiffs' Insureds in a reasonably anticipated manner.

197.    MASCO is strictly liable to Plaintiffs under R.S.Mo.§ 537.60 and other applicable law for the injuries suffered by Plaintiffs because the water supply lines of Schedule A Plaintiffs' Insureds were defective and unreasonably dangerous for their intended use and MASCO'S failure to warn Plaintiffs' Insureds of this condition proximately caused the aforementioned damages.

Electronically Filed - St Louis County - October 14, 2019 - 03:27 PM

198.    MASCO's water supply lines provided no warnings/instructions or the warning was inadequate or provided inadequate instructions as to the coupling nut in one or more of the following ways:

      a.    Failing to warn purchasers and users of the useful life of the water supply line and the coupling nut, the likelihood of failure after expiration of the useful life and the need to replace the water supply line before the expiration of useful life to avoid damage to their property;

      b.    Failing to warn purchasers and users of the risk of causing a fracture of the coupling nut by over tightening during installation and failing to advise purchasers and users of how to install the water supply lines so as not to over tighten the coupling nut and cause such fractures and damage to their property;

      c.    Failing to warn purchasers and users never to use a wrench or tool to tighten the plastic coupling nut because doing so would likely cause failure and damage to their property;

      d.    Failing to warn purchasers and users that certain additives commonly found in the water supply and certain household chemicals promote failure and damage to their property; and

      e.    Failing to warn purchasers and users that the coupling nut and water supply line was substantially more prone to failure and causing damage to their property than traditional metal plumbing and other available products.

199.    As a direct and proximate result of MASCO's aforesaid acts and/or omissions, for which MASCO is strictly liable, Schedule A Plaintiffs' Insureds suffered damage to their real and personal property, as well as the loss of use of said property, extra expenses, and other incidental and consequential damages in an amount in excess of the minimum jurisdictional limits of this Court.

200.    By virtue of the aforesaid payment and pursuant to the terms of the aforesaid insurance policies, Plaintiffs are legally, equitably, and contractually subrogated to the rights of Schedule A Plaintiffs' Insureds to the extent of such payments.

Electronically Filed - St Louis County - October 14, 2019 - 03:27 PM

201.    In the event that Plaintiffs become obligated to pay additional sums for these losses in the future, Plaintiffs pray for leave to amend this Petition accordingly when the true and exact costs thereof are ascertained.

## COUNT XI –NEGLIGENT DESIGN
### (MASCO)

202.    Schedule A Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

203.    Schedule A Plaintiffs' Insureds were members of the class of persons that MASCO should reasonably have foreseen as being subject to the harms caused by the water supply lines' defective condition.

204.    The foreseeable risks of harm to property associated with the failure of these water supply lines, including those of Schedule A Plaintiffs' Insureds, and the severity of such harm was substantial and warranted adequate care in the design of these water supply lines so as to minimize the risk of failures and resulting harm.

205.    The likelihood of the occurrence of harm to real and personal property as the result of failure of these water supply lines, including those of Schedule A Plaintiffs' Insureds, was foreseeable by the manufacturer at the time the water supply lines were designed, manufactured and distributed.

206.    In the exercise of ordinary care, reasonable and feasible alternative designs were available and readily achievable at the time these coupling nuts were designed.

207.    The available and practical reasonable alternative designs would have eliminated the propensity for failure of these water supply lines, including those of Schedule A Plaintiffs' Insureds.

Electronically Filed - St Louis County - October 14, 2019 - 03:27 PM

208.    As the designer, manufacturer and/or seller of these water supply lines, including those of Schedule A Plaintiffs' Insureds, it was the duty of MASCO to:

      a.    Use reasonable care in the design and engineering of its water supply lines, so that they would be reasonably fit for the intended, anticipated and reasonably foreseeable uses, including foreseeable misuses of the water supply lines;

      b.    Use reasonable care in the design and engineering of its water supply lines such that they would be equipped with all necessary and properly functioning safeguards which would prevent the plastic coupling nut from cracking and failing while it was being properly used; and

      c.    Use reasonable care in the design and engineering of its water supply lines as to eliminate any hazard that would permit the plastic coupling nut to fracture, resulting in damage.

209.    MASCO breached these duties in one or more of the following ways:

      a.    MASCO knew or should have known that its water supply lines were designed without concern for safety and performance;

      b.    MASCO failed to exercise ordinary care so as to design the coupling nut so that it would not fracture during the intended, anticipated and reasonably foreseeable use, including reasonably foreseeable misuse of the water supply lines.

      c.    MASCO failed to exercise ordinary care in choosing the material for the manufacture of the coupling nuts;

      d.    MASCO failed to exercise ordinary care so as to adequately understand the properties of the materials used for the manufacturing of the coupling nuts, and account for the properties of the material used for manufacturing the coupling nuts;

      e.    MASCO failed to exercise ordinary care so as to  account for design considerations applicable to the material from which the coupling nuts were made which were well known and commonly utilized at the time the coupling nuts were designed, including but not limited to avoiding sharp angles, notch sensitivity, material creep over time, and crazing and crack propagation over time;

      f.    MASCO failed to exercise ordinary care in the design of the molds used to manufacture the coupling nuts so as to minimize the occurrence of manufacturing defects;

      g.    MASCO failed to exercise ordinary care so as to design a coupling that which would have an adequately long useful life without failure, to accommodate the reasonable expectation of consumers;

Electronically Filed - St Louis County - October 14, 2019 - 03:27 PM

     h.     MASCO failed to exercise ordinary care to test the design of the coupling not during the design phase so as to verify that it would not fracture during the intended, anticipated and reasonably foreseeable use, including reasonably foreseeable misuse of the water supply lines; and

     i.     MASCO negligently designed the water supply line in other ways, under the circumstances, to be determined.

210.    There were practical, economical and technically feasible alternative designs for the water supply lines which would have prevented the damages to Plaintiffs.

211.    As a direct and proximate result of MASCO's lack of ordinary care and aforesaid negligent acts and/or omissions, for which MASCO is liable, Schedule A Plaintiffs' Insureds suffered damage to their real and personal property, as well as the loss of use of said property, extra expenses, and other incidental and consequential damages in an amount in excess of the minimum jurisdictional limits of this Court.

212.    By virtue of the aforesaid payment and pursuant to the terms of the aforesaid insurance policies, Schedule A Plaintiffs are legally, equitably, and contractually subrogated to the rights of Schedule A Plaintiffs' Insureds to the extent of such payments.

213.    In the event that Schedule A Plaintiffs become obligated to pay additional sums for these losses in the future, Schedule A Plaintiffs pray for leave to amend this Petition accordingly when the true and exact costs thereof are ascertained.

### COUNT XII –NEGLIGENT MANUFACTURE
**(MASCO)**

214.    Schedule A Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

215.    MASCO designed, engineered, manufactured, distributed, marketed, packaged, labeled, constructed, tested, inspected, warranted, and/or sold water supply lines which were used by Schedule A Plaintiffs' Insureds.

Electronically Filed - St Louis County - October 14, 2019 - 03:27 PM

216.    In addition to being defective by design, some of the water supply lines sold by MASCO also contained manufacturing defects of the coupling nut which, independently caused the coupling nuts to fail and rendered the water supply line unfit for the intended, anticipated and reasonably foreseeable uses, including reasonably foreseeable misuses.

217.    Such manufacturing defects included brittleness of the material, failure of the material to properly fuse at the part line and voids in the material caused by failure to properly maintain the operating temperature of both the molds used to manufacture the coupling nut and the material being injected and the mold.

218.    The water supply lines and coupling nuts, containing manufacturing defects left the possession and control of MASCO in such defective condition, and were installed and utilized in such defective condition, without substantial alteration.

219.    Schedule A Plaintiffs' Insureds were members of the class of persons that MASCO should reasonably have foreseen as being subject to the harms caused by the water supply lines' defective condition.

220.    The foreseeable risks of harm to property associated with the failure of these water supply lines, including those of Schedule A Plaintiffs' Insureds, and the severity of such harm was substantial and warranted adequate care in the manufacture of these water supply lines so as to minimize the risk of failures and resulting harm.

221.    The likelihood of the occurrence of harm to real and personal property as the result of failure of these water supply lines, including those of Schedule A Plaintiffs' Insureds, was foreseeable by the manufacturer at the time the water supply lines were manufactured and distributed.

Electronically Filed - St Louis County - October 14, 2019 - 03:27 PM

222.     As the manufacturer of these water supply lines, including those of Schedule A Plaintiffs' Insureds, it was the duty of MASCO to:

      a.     Use reasonable care in the manufacturing and assembling of its water supply lines, so that they would be reasonably fit for intended, anticipated and reasonably foreseeable uses, including foreseeable misuses of the water supply lines; and

      b.     Use reasonable care in the manufacturing and assembling of its water supply lines as to eliminate any hazard that would permit the plastic coupling nut to fracture, resulting in damage.

223.     MASCO breached these duties in one or more of the following ways:

      a.     MASCO knew or should have known that its water supply lines were manufactured without concern for proper operating parameters;

      b.     MASCO failed to exercise ordinary care during the manufacturing the coupling nuts to properly control mold and material temperatures.

      c.     MASCO failed to exercise ordinary care in quality control so as to identify defectively manufactured coupling nuts before distribution.

      d.     MASCO failed to exercise ordinary care in monitoring the manufacturing process so as to ensure quality control during manufacturing.

      e.     MASCO knew or should have known that its water supply lines were manufactured without concern for the creation of voids;

      f.     MASCO knew or should have known that its water supply lines were manufactured without concern for production complying with design specifications;

      g.     MASCO knew or should have known that its water supply lines were manufactured without concern for the final product becoming more brittle; and

      h.     MASCO negligently manufactured the water supply line in other ways, under the circumstances, to be determined.

224.     As a direct and proximate result of MASCO's aforesaid negligent acts and/or omissions, for which MASCO is liable, Schedule A Plaintiffs' Insureds suffered damage to their real and personal property, as well as the loss of use of said property, extra expenses, and other incidental and consequential damages in an amount in excess of the minimum jurisdictional limits of this Court.

Electronically Filed - St Louis County - October 14, 2019 - 03:27 PM

225.    By virtue of the aforesaid payment and pursuant to the terms of the aforesaid insurance policies, Schedule A Plaintiffs are legally, equitably, and contractually subrogated to the rights of Schedule A Plaintiffs' Insureds to the extent of such payments.

226.    In the event that Schedule A Plaintiffs become obligated to pay additional sums for these losses in the future, Schedule A Plaintiffs pray for leave to amend this Petition accordingly when the true and exact costs thereof are ascertained.

**COUNT XIII – NEGLIGENT FAILURE TO WARN/INSTRUCT OR
INADEQUATE WARNING/INSTRUCTION
(MASCO)**

227.    Schedule A Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

228.     DEFENDANTS designed, engineered, manufactured, distributed, marketed, packaged, labeled, constructed, tested, inspected, warranted, and/or sold in the ordinary course of DEFENDANT'S business, thus placing the water supply lines in the stream of commerce, the defective and unreasonably dangerous water supply lines, to Schedule A Plaintiffs' Insureds.

229.    Schedule A Plaintiffs' Insureds were members of the class of persons that MASCO should reasonably have foreseen as being subject to the harms caused by the water supply lines' defective condition.

230.    MASCO knew, or should have known, that the water supply lines contained  latent hazards and defects and that consumers would not comprehend the latent hazards and defects without adequate warnings/instructions.

231.    MASCO knew, or should have known, that the water supply lines, including those of Schedule A Plaintiffs' Insureds, were highly susceptible to failure under expected installation and use conditions and that consumers would not repeatedly replace their water supply lines without adequate warnings/instructions.

Electronically Filed - St Louis County - October 14, 2019 - 03:27 PM

232.   MASCO knew, or should have known, that Schedule A Plaintiffs' Insureds would use the water supply lines without first inspecting their durability.

233.    MASCO failed to inform Schedule A Plaintiffs' Insureds as to the water supply lines' susceptibility to sudden catastrophic failure.

234.   MASCO failed to warn/instruct consumers, including Schedule A Plaintiffs' Insureds, that it was necessary to periodically inspect and replace the water supply lines, even if the water supply lines had not yet failed or even if the water supply lines were still within the warranty period measured after the consumer's date of purchase of the water supply lines.

235.   MASCO had a duty to supply necessary and adequate warnings of risks and hazards associated with the use of the water supply lines, including those of Schedule A Plaintiffs' Insureds, which were known or reasonably knowable to MASCO and which were likely unknown to or unappreciated by the purchasers and users of the water supply lines.

236.   MASCO breached this duty to Schedule A Plaintiffs' Insureds, to supply necessary and adequate warnings by;

a.   Failing to warn purchasers and users of the useful life of the water supply line and the coupling nut, the likelihood of failure after expiration of the useful life and the need to replace the water supply line before the expiration of useful life to avoid damage to their property;

b.   Failing to warn purchasers and users of the risk of causing a fracture of the coupling nut by over tightening during installation and failing to advise purchasers and users of how to install the water supply lines so as not to over tighten the coupling nut and cause such fractures and damage to their property;

c.   Failing to warn purchasers and users never to use a wrench or tool to tighten the plastic coupling nut because doing so would likely cause failure and damage to their property;

d.   Failing to warn purchasers and users that certain additives commonly found in the water supply and certain household chemicals promote failure and damage to their property; and

Electronically Filed - St Louis County - October 14, 2019 - 03:27 PM

e.    Failing to warn purchasers and users that the coupling nut and water supply line was substantially more prone to failure and causing damage to their property than traditional metal plumbing and other available products.

237.    The water supply lines were defective and unfit for the intended, anticipated and reasonably foreseeable uses, including reasonably foreseeable misuses of the water supply lines due to due to the lack of and inadequacy of warnings and instructions.

238.    Had necessary and adequate warnings been supplied, the purchasers and users of the water supply lines, including Schedule A Plaintiffs' Insureds, would have either not purchased and not used the water supply lines or would have otherwise avoided harm to their property.

239.    As a direct and proximate result of MASCO's failure to supply necessary and adequate warnings and instructions, Schedule A Plaintiffs' Insureds suffered damage to their real and personal property, as well as the loss of use of said property, extra expenses, and other incidental and consequential damages in an amount in excess of the minimum jurisdictional limits of this Court.

240.    By virtue of the aforesaid payment and pursuant to the terms of the aforesaid insurance policies, Schedule A Plaintiffs are legally, equitably, and contractually subrogated to the rights of Schedule A Plaintiffs' Insureds to the extent of such payments.

241.    In the event that Schedule A Plaintiffs become obligated to pay additional sums for these losses in the future, Schedule A Plaintiffs pray for leave to amend this Petition accordingly when the true and exact costs thereof are ascertained.

### COUNT XIV – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
**(MASCO)**

242.    Schedule A Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

Electronically Filed - St Louis County - October 14, 2019 - 03:27 PM

243.     At the time MASCO designed, engineered, manufactured, assembled, sold, and distributed the water supply lines and placed them into the stream of commerce, MASCO impliedly, warranted and represented that its water supply lines were merchantable at the time of sale, reasonably, fit and suitable for intended, anticipated and reasonably foreseeable use, including reasonably foreseeable misuse that they were in no way dangerous or defective in design or manufacture; nor were they dangerous or defective due to absent or inadequate warnings, guarding and/or instructions.

244.     The risk of damage to the user's property associated with failure of the water supply lines and coupling nuts and the severity of this risk was foreseeable by MASCO.

245.     The likelihood of the occurrence of the failure of the coupling nut on the water supply line and resulting damage to the user's property was foreseeable by MASCO at the time it designed, manufactured and sold these water supply lines.

246.     There were available, at the time these water supply lines were designed manufactured and sold, practical and reasonable alternative designs that would eliminate the failure and risk of property damage to the user.

247.     The failure of MASCO to utilize the available alternative designs which were practical, technically feasible and economically feasible rendered these water supply lines not merchantable for sale, defective, prone to failure and unfit for the intended, anticipated and reasonably foreseeable uses, including reasonably foreseeable misuses of such water supply lines.

248.     The water supply lines and coupling nuts were also prone to failure and unfit for the intended, anticipated and reasonably foreseeable uses, including reasonably foreseeable misuses of such water supply lines by reason of lack of or inadequacy of warnings and instructions, and thus not merchantable at the time of sale, as described in the previous paragraphs.

Electronically Filed - St Louis County - October 14, 2019 - 03:27 PM

249.    The coupling nuts and associated water supply lines were not only not merchantable and  defective by design, but also not merchantable, defective and unfit for their intended, anticipated and reasonably foreseeable uses, including reasonably foreseeable misuses by reason of manufacturing defects, including but not limited to failure to control mold and material temperatures during manufacturing, voids within the material, incomplete fusing of the material, brittleness of the material, failure to monitor the manufacturing process for quality control during the process, and failure to employ adequate quality control so as to identify defectively manufactured coupling nuts before distribution.

250.    The above listed warranties implied by law were breached by MASCO in that the water supply lines, that caused Plaintiffs to suffer damages, were defective and prone to failure during the intended, anticipated and reasonably foreseeable use, including reasonably foreseeable misuses of the water supply lines and thus were not merchantable at the time of sale.

251.    As a direct and proximate result of and as the natural and foreseeable consequence of  MASCO's aforesaid breach of warranty, for which MASCO is liable, Schedule A Plaintiffs' Insureds suffered damage to their real and personal property, as well as the loss of use of said property, extra expenses, and other incidental and consequential damages in an amount in excess of the minimum jurisdictional limits of this Court.

252.    DEFENDANTS have notice of the aforesaid breach of warranty as to Schedule A Plaintiffs' Insureds and consumers at large.

253.    By virtue of the aforesaid payment and pursuant to the terms of the aforesaid insurance policies, Schedule A Plaintiffs are legally, equitably, and contractually subrogated to the rights of Schedule A Plaintiffs' Insureds to the extent of such payments.

Electronically Filed - St Louis County - October 14, 2019 - 03:27 PM

254.    In the event that Schedule A Plaintiffs become obligated to pay additional sums for these losses in the future, Schedule A Plaintiffs pray for leave to amend this Petition accordingly when the true and exact costs thereof are ascertained.

## COUNT XV – ALLEGATIONS - DAMAGES

255.    All Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

256.    DEFENDANTS' breaches of their duties were the proximate cause of the injuries and damages suffered by Plaintiffs which injuries and damages include, but are not limited to the following:

   a.   For the full extent of the amounts paid by Plaintiffs to their Insureds;
   b.   For pre-judgment interest according to proof;
   c.   For post-judgment interest according to proof;
   d.   For Plaintiffs' costs of suit herein;
   e.   For such other and further relief as to the Court may deem just and proper.

WHEREFORE, Plaintiffs pray for damages against Defendants in such amount as shall be deemed fair and just by a jury at the time of trial for whatever amount above $25,000.00 Plaintiffs are found to be entitled, plus interest and costs to be taxed.


Respectfully submitted,

GABRIS LAW, LLC

BY:    /s/ Daniel P. Gabris
       Daniel P. Gabris, #66717
       2333 Grissom Dr., Ste. 107
       St. Louis, MO 63146
       314.624.1005
       314.272.3070 (facsimile)
       DG@GabrisLaw.com


       Attorney for Plaintiffs

Electronically Filed - St Louis County - October 14, 2019 - 03:27 PM

SCHEDULE A

19SL-CC04524

| Stutman Law File No | Plaintiff | Insured | Claim Number | DOL | Damages | Loss Location |
|---|---|---|---|---|---|---|
| SL-10847 | Lititz Mutual Insurance Company | Ray, Yolanda | 02-2014-0004396 | 11/16/2014 | $47,981.81 | 1851 Ferguson Ave, Ferguson, MO 63133 |
| SL-11746 | Auto Club Family Insurance Company | Myers, Michael | HO1260088 | 3/21/2014 | $242,788.44 | 1879 Chimney Point Sunrise Beach, MO 65079/879 Cobbs Point, Sunrise Beach, MO |